**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TANYA CANTU, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NINTENDO OF AMERICA, INC., a Washington corporation, d/b/a WWW.NINTENDO.COM,

Defendant.

Case No. 2:26-cv-01520-SPG-AGR

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

[Proposed] Order lodged concurrently herewith]

Date: June 17, 2026
Time: 1:30 p.m.
Courtroom: 5C
Judge: Hon. Sherilyn Peace Garnett

# TABLE OF CONTENTS

**Page(s)**

I. ARGUMENT .......... 1

A. Plaintiff Has Both Article III Standing to Sue and Statutory Standing. .......... 1

1. Plaintiff Can Have Standing Even as a "Tester". .......... 1

2. Deceit Is a "Plus" Factor that Establishes Both a Reasonable Expectation of Privacy and Highly Offensive Infringement. .......... 4

3. The Expectation of Privacy Must Be Objectively Reasonable. .......... 6

4. The Right to Privacy Encompasses the Individual's Control of Information Concerning the Individual. .......... 6

a. The Ninth Circuit Does Not Impose a Sensitive or Confidential Information Requirement. .......... 7

b. Information Including Identifiers, Internet Activity Information Including Browsing History, and Geolocation Data Constitute a Consumer's Personal Information in California. .......... 8

c. Webpages Viewed Implicates Privacy Interests. .......... 10

5. The Ninth Circuit Recognizes that a Website Visitor Communicates with a Website and Sends Messages to a Website. .......... 11

6. The Website Has Embedded Third-Party Cookies to Surveil Plaintiff and Other Users of the Website Including When They Visit Other Websites and Build Profiles. .......... 11

a. The FAC Alleges that Plaintiff Conducted a Search on the Website. .......... 12

b. Plaintiff's Expert Analysis in December 2024 Is Close Enough in Time to Plaintiff's Visit in

August 2024 to Be Viewed as Contemporaneous. .......... 13

7. Defendant Violated Its Statutory Duties to Disclose Its Personal Information Gathering Practices Via a Conspicuous Notice at Collection that Disclosed that Its Website Downloaded Third Party Cookies onto the User's Device That Would Remain Active When th User Visited Other Websites. .......... 13

8. *Popa v. Microsoft Corp.* Is Distinguishable. .......... 17

9. Plaintiff Did Not Consent to Defendant's Conduct. .......... 18

B. The FAC Plausibly Alleges a Violation of Section 638.51 of the Penal Code. .......... 20

1. The Common Law Rule of Lenity Does Not Apply Here. .......... 20

C. The Intrusion Upon Seclusion Claim Is Plausibly Alleged. .......... 22

1. The FAC Pleads Highly Offensive Conduct. .......... 22

D. The Section 631(a) Claim Is Plausibly Alleged. .......... 23

**CERTIFICATE OF COMPLIANCE** .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barker v. Riverside County Office of Education*,
584 F.3d 821 (9th Cir. 2009) ....................12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................5, 11, 15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023).................... 10, 22, 23

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................2, 3, 4

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 4195768 (C.D. Cal. May 18, 2023)....................3

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ....................18

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ....................2, 3

*California v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
2023 WL 1873087 (N.D. Cal. Feb. 9, 2023) ....................2

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....................19

*Camplisson v. Adidas America, Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)....................8, 17

*Casillas v. Six Flags Enter. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) (Marshall, J.)....................23, 25

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
867 F.3d 1093 (9th Cir. 2017) ....................1, 3, 4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) (Anello, J.) ....................25

*D'Antonio v. Smith & Wesson Inc.*,
- F. Supp. 3d -, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ............................23

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025)............................................18, 23

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) .......................................8, 17, 23

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025).....................................................12, 20

*Dellasala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .................................................17

*Doe v. 2TheMart.com Inc.*,
140 F. Supp. 2d 1088 (W.D. Wash. 2001) .........................................................9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ................................................................ 6, 7, 8, 18

*Federal Election Comm'n v. Cruz*,
596 U.S. 289 (2022)......................................................................................2, 3

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ....................................................20

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025)............................................. 7, 10, 18, 23

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ..................................................23

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025)...................................................20

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026)...................................................18, 23

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).......................................... 10, 19, 22, 23

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)...............................................................................1, 2, 3, 4

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) .......... 5, 6

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) (Peace Garnett, J.) .......... 24, 25

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .......... 5, 6

*In re Anonymous Online Speakers*,
661 F.3d 1168 (9th Cir. 2011) .......... 9

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 24

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) .......... *passim*

*In re Google*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.) .......... 4, 19, 20

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 19, 20

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 5

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 5, 6

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 9, 22

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) .......... 5

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 5

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10, 23, 24

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........................................................10

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...............................................19, 20

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107, (9th Cir. May 31, 2022).....................................................19

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ...............................................................................7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .............................................................................24

*Krzyzek v. OpenX Technologies, Inc.*,
- F. Supp. 3d -, 2026 WL 206855 (N.D. Cal Jan 27, 2026)........................ *passim*

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ..............................................................................1

*Legacy Health Sys. v. Hathi*,
2024 WL 2843034 (9th Cir. Cir. June 5, 2024)..................................................2

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025).......................................................10

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) (Williams Court, J.).....................23

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019).........................................................5, 6

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec 12, 2024)................................................8, 10

*National Rifle Ass'n of Amer. v. Vullo*,
602 U.S. 175 (2024)...........................................................................................12

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014)..............................................................22

*Pemberton v. Restaurant Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ..............................................5, 23

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) (Def.'s Mem. ) .......................................... 17, 18

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......................................... 25

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. July 18, 2025) .......................................... 20, 21, 23

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......................................... 3, 4

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......................................... 19

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.) .......................................... 10

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) .......................................... 12

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......................................... 18, 23

*Semien v. Pubmatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......................................... 7, 17, 18, 23

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......................................... 4, 10, 19

*Shah v. Myfitnesspal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......................................... 5, 23

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......................................... 5, 23

*Smith v. Pacific Properties and Dev. Corp.*,
358 F.3d 1097 (9th Cir. 2004) .......................................... 3, 4

*South Dakota v. Wayfair*,
585 U.S. 162 (2018) .......................................... 5

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......................................... 25

*Stenson Tamaddon, LLC v. United States Internal Revenue Service*, 742 F. Supp. 3d 966 (D. Ariz. 2024) ....................2

*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) ....................25

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ....................19

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)....................7

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*, 489 U.S. 749 (1989)....................6

*United States v. Councilman*, 418 F.3d 67 (1st Cir. 2005) (en banc)....................24

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ....................10

*United States v. Staves*, 383 F.3d 977 (9th Cir. 2004) ....................4, 19

*Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ....................23

*Wiley v. Universal Music Group, Inc.*, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025).................... 5, 16, 17, 23

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018)....................22

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025)....................10

*Zeichner v. Nord Security Inc.*, 2024 WL 4951261 (N.D. Cal. Dec. 2, 2024)....................14

**California Cases**

*Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272 (2009) ....................6, 17

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ....................6

*Neary v. Regents of the University of California*,
3 Cal.4th 273 (1992) ....................17, 20

*People v. Avery*,
27 Cal.4th 49 (2002) ....................21

*People v. Beeman*,
35 Cal. 3d 547 (1984) ....................25

*People v. Braden*,
14 Cal.5th 791 (2023) ....................21

*People v. Dole*,
122 Cal. 486 (1898) ....................24, 25

*Rattagan v. Uber Techs., Inc.*,
17 Cal.5th 1 (2024) ....................5, 14

*Sanders v. Am. Bd. Co., Inc.*,
20 Cal.4th 907 (1999) ....................20

*Shulman v. Group W Productions, Inc.*,
18 Cal.4th 200 (1998) ....................20

**U.S. Constitution**

First Amendment....................2, 3

Article III.................... 1, 2, 17, 23

**Federal Statutes**

42 U.S.C.
§ 3601 *et seq.* ....................3
§ 3604(a) ....................3
§ 3604(d) ....................3
§ 3604(f)(2) ....................4
§ 12181 *et seq.* ....................3
§ 12182(a) ....................4
§ 12182(b)(1)(A)(iv) ....................3
§ 12188 ....................3
ADA ....................1, 3

Title III of the Americans with Disabilities Act of 1990....................................3
Electronic Communications Privacy Act..........................................................24
Fair Housing Act.........................................................................................3, 4
Pen Register Act .........................................................................................21
USA Patriot Act of 2001, Pub. L. No. 107–56 § 216, 115 Stat. 272 (2001)..........................................................................................................21
Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968)..........................................................24

**California Statutes**

Civil Code
§ 1798.100 *et seq.* ...............................................................................................8
§ 1798.100(a) ......................................................................................................14
§ 1798.100(a)(1)-(3) ...........................................................................................14
§ 1798.100(b) ......................................................................................................14
§ 1798.140...............................................................................................................9
§ 1798.140(v)(1)(A)..........................................................................................8, 9
§ 1798.140(v)(1)(F) ..........................................................................................8, 9
§ 1798.140(v)(1)(G).......................................................................................7, 8, 9
§ 1798.140(ae)(1)(C) ...............................................................................................7
§ 1798.140(w) .........................................................................................................7
§ 1798.175...............................................................................................................8
California Consumer Privacy Act of 2018 ................................................ *passim*

Penal Code
§ 4.......................................................................................................................21
§ 631...................................................................................................................25
§ 631(a) ........................................................................................ 19, 23, 24, 25
§ 637.2(a) ..............................................................................................................3
§ 638.50...............................................................................................................21
§ 638.51.......................................................................................................9, 20, 21

**California Regulations**

11 C.C.R.
§ 7000(a) .............................................................................................................14
§ 7001(q) .............................................................................................................14
§ 7012..................................................................................................................14
§ 7012(c) ........................................................................................................14, 15
§ 7012(c)(1).........................................................................................................14
§ 7012(d) .......................................................................................................14, 15

**Federal Rules**

Rules of Civil Procedure
Rule 12(b)(6) ........ 12

**Other Authorities**

147 Cong. Rec. H7159-03, H7165, H7196, H7197, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner) ........ 21

147 Cong. Rec. S10990-02, S11000, S11006, S11055, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy) ........ 21

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5 ........ 1
n.61 ........ 1
n.70 ........ 1
n.73 ........ 1

House Report No. 107-236(I), at *60 (Oct. 11, 2001) ........ 21

https://oag.ca.gov/privacy/ccpa ........ 16

Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) ........ 21

Restatement (Second) of Torts, § 652D cmt. C, illus. 11 ........ 5

S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968) ........ 21

The Rutter Group, *Federal Civil Procedure Before Trial* ¶ 9:213 (2026) ........ 12

# <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. ARGUMENT

### A. Plaintiff Has Both Article III Standing to Sue and Statutory Standing.

#### 1. Plaintiff Can Have Standing Even as a "Tester".

Defendant argues that Plaintiff, a "tester," (Def.'s Mem. at 11:6; 14:12; 15:9), cannot have "statutory standing" to sue because she did not "suffer[] an injury necessary for statutory standing," (Def's Mem. at 15:16-19; 15:24-26). In essence, Defendant implicitly argues that Plaintiff suffered a self-inflicted injury, (*see* Def.'s Mem. at 14:11-16:11), but a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing. It is clear, however, that no rigid lines are drawn on this basis." 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper"). That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *Id.* § 3531.5 & n.70. "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***." *Id.* at n.70 (emphasis added) (citation omitted); *id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61; *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*") (citing *Havens*), *cited in Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis"); *id.* at 1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"). *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself. *See*

*Federal Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

In *Cruz*, the federal Government argued that Senator Ted Cruz and other plaintiffs lacked "standing because their injuries were 'self-inflicted,'"[1] *id.* at 296, and asked the Supreme Court "to recognize an exception to traceability for injuries that a party purposely incurs," *id.*, but the Supreme Court unequivocally rejected such challenge:

> "We have never recognized a rule of this kind under Article III. To the contrary, ***we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred***."

*Id.* at 297 (emphasis added) (citing *Havens Realty*, 455 U.S. at 374). Notably, the Ninth Circuit has followed *Cruz* for such proposition. *Legacy Health Sys. v. Hathi*, 2024 WL 2843034, at *1 (9th Cir. Cir. June 5, 2024) (citing *Cruz*); *Stenson Tamaddon, LLC v. United States Internal Revenue Service*, 742 F. Supp. 3d 966, 982-83 (D. Ariz. 2024).

*California v. Azar*, 911 F.3d 558, 573-74 (9th Cir. 2018), also supports Plaintiff's position. *California v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 2023 WL 1873087, at *10 (N.D. Cal. Feb. 9, 2023) (characterizing *Azar* as concluding that California had standing to sue because "even though one could have argued that the state contributed to its own injury, the state was not so ***solely at fault*** that it was proper to deem the injury self-inflicted") (emphasis added).

Defendant's reliance on *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023), is misplaced because Defendant conveniently ignores that such decision expressly stated with respect to the Court's Article III standing analysis: "the

---

[1] Senator Cruz and his campaign both stipulated that their "sole and exclusive motivation" for violating the campaign-finance restriction in federal law was to create a factual basis for challenging such restriction under the First Amendment. 596 U.S. at 296.

Court's analysis does not depend on Plaintiff's status as a tester[.]"[2] *Id.* at *4 n.3.

*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1-*2 (C.D. Cal. Apr. 4, 2025), is both distinguishable and is unpersuasive. First, although *Autotrader.com* purported to distinguish *Cruz* as a "First Amendment" case, it did so without elaboration, 2025 WL 1085787, at *1. And, it failed to consider *Azar*.

Second, although *Autotrader.com* purported to distinguish *CREEC* as involving "ADA claims," it failed to recognize that the reason why *CREEC*, which involved a claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, followed *Havens*, the latter of which involved a claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, is because both statutes used identical language to describe who had standing to sue, which was "any person." *CREEC* noted that "the ADA's enforcement provision, [42 U.S.C.] § 12188, provides that ' '*any person* who is being subjected to discrimination on the basis of disability' may bring suit,' exactly tracking the 'any person' language of *Havens Realty* [in 42 U.S.C. § 3604(d)]." 867 F.3d at 1101-02 (emphasis in original). Likewise, the "[a]ny person" language in section 637.2(a) of the Penal Code "exactly track[s] the 'any person' language of *Havens Realty*" too.

Significantly, the "absence of limiting language" "limit[ing] standing to sue under discrimination statutes to certain groups of people" such as persons who make a "bona fide offer" to rent or purchase a dwelling under the FHA, 42 U.S.C. § 3604(a), or "clients or customers of the covered public accommodation," 42 U.S.C. § 12182(b)(1)(A)(iv) under Title III of the ADA, was crucial to the outcomes in both *Havens* and *CREEC*. *CREEC*, 867 F.3d at 1101-02.

Indeed, *CREEC* cited with approval *Smith v. Pacific Properties and Dev. Corp.*, 358 F.3d 1097, 1102-04 (9th Cir. 2004), the latter of which involved a different

---

[2] *Byars* subsequently abandoned reliance upon the defendant's ***facial*** challenge after the plaintiff moved for reconsideration. The Court relied solely upon the defendant's ***factual*** challenge in a subsequent order denying such motion for reconsideration. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 4195768, at *4 (C.D. Cal. May 18, 2023).

provision of the FHA, 42 U.S.C. § 3604(f)(2), than what was addressed at *Havens*. *CREEC*, 867 F.3d at 1101. *Smith* held that "[t]he district court … erred as a matter of law in interpreting § 3604(f)(2) to preclude tester standing." 358 F.3d at 1104. *Smith* reasoned that § 3604(f)(2) was not limited to bona fide purchasers based on its language. 358 F.3d at 1103-04; 42 U.S.C. § 3604(f)(2) ("it shall be unlawful … [t]o discriminate against ***any person*** in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--(A) that person.") (emphasis added).

Thus, *Autotrader.com* engaged in a limited analysis of *CREEC* that ignored the "absence of limiting language" in the relevant statutes analyzed therein including 42 U.S.C. § 12182(a) ("***[n]o individual*** shall be discriminated against on the basis of disability") (emphasis added).

Third, *Autotrader.com* cited in support *Byars* without recognizing that the latter decision stated that "the Court's analysis does not depend on Plaintiff's status as a tester[.]" 2023 WL 2996686, at *4 n.3.

Fourth, *Autotrader.com* failed to address or distinguish *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer consent***") (emphasis added); *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent.") (emphasis in original); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers."). Thus, *Autotrader.com* conflicts with Ninth Circuit precedent.

**2. Deceit Is a "Plus" Factor that Establishes Both a Reasonable Expectation of Privacy and Highly Offensive Infringement.**

It is well-established that deceit can constitute a "plus" factor that establishes both a reasonable expectation of privacy and the existence of conduct that is highly offensive

to a privacy interest. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*Facebook Tracking*") ("Plaintiffs have plausibly alleged that Facebook set an expectation that … user data would not be collected, but then collected it anyway."); *Shah v. Politico LLC*, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) ("[Plaintiff] was immediately presented with an option to opt out of certain tracking cookies[3] upon entering the Politico site, giving rise to an expectation of privacy. In short, Politico 'set an expectation that ... user data would not be collected, but then collected it anyway.' *Facebook Tracking*. That is enough to allege an injury.'"); *Shah v. Myfitnesspal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (citing Restatement (Second) of Torts, § 652D cmt. C, illus. 11); *Wiley v. Universal Music Group, Inc.*, 2025 WL 3654085, at *6 (N.D. Cal. Dec. 17, 2025); *Pemberton v. Restaurant Brands Int'l, Inc.*, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("***Courts have held that 'deceit can be a kind of 'plus' factor [that is] significant in … making a privacy intrusion especially offensive***.") (emphasis added) (quoting *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) and citing *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1078 (N.D. Cal. 2021); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294 (3d Cir. 2016); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 151 (3d Cir. 2015).

As explained below, the First Amended Complaint ("FAC") plausibly alleges that Defendant engaged in deceit,[4] which constitutes a "plus" factor that establishes both a

---

[3] "A 'cookie' is software code that transmits a user's web-browsing history and other usage data back to the entity that attached the cookie." *In re Henson*, 869 F.3d 1052, 1056 (9th Cir. 2017). Cookies are "small text files stored on the user's device." *Facebook Tracking*, 956 F.3d at 596; *South Dakota v. Wayfair*, 585 U.S. 162, 181 (2018) ("A website may leave cookies saved to the customers' hard drives….").

[4] California case law … has viewed fraud by concealment on equal footing with fraud by affirmative misrepresentation." *Rattagan v. Uber Techs., Inc.*, 17 Cal.5th 1, 39 (2024); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) ("Omissions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or *an*

Continued on the next page

reasonable expectation of privacy and the existence of conduct that is highly offensive to a privacy interest. *In re Google Location History Litig.*, 514 F. Supp. 3d at 1157; *Heeger*, 2019 WL 7282477, at *4; *McDonald*, 385 F. Supp. 3d at 1036.

### 3. The Expectation of Privacy Must Be Objectively Reasonable.

Courts evaluating the existence of a reasonable expectation of privacy "first consider whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Facebook Tracking*, 956 F.3d at 601-02 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009)). "To make this determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Facebook Tracking*, 956 F.3d at 602 (citing *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 36 (1994)). Courts also consider "***the opportunity to be notified in advance and consent to the intrusion***." *Hernandez*, 47 Cal.4th at 287 (emphasis added).

"[T]he expectation of privacy must be '***objectively*** reasonable,'" *Hernandez*, 47 Cal.4th at 286 (emphasis added), "founded on broadly based and widely accepted community norms." *Hill*, 7 Cal.4th at 37.

### 4. The Right to Privacy Encompasses the Individual's Control of Information Concerning the Individual.

Defendant's analysis is flawed from the outset because it conveniently ignores that the right to privacy encompasses the individual's control of information concerning the individual. *Facebook Tracking*, 956 F.3d at 598 (holding that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person'") (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*, 489 U.S. 749, 763 (1989)); *Eichenberger*, 876 F.3d at 983 ("the Supreme Court has noted that 'both the

---

Continued from the previous page
*omission of a fact the defendant was obliged to disclose*.'") (emphasis in original) (quotation omitted).

common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.' And this court has consistently found that '[v]iolations of the right to privacy have long been actionable at common law.'") (internal citation omitted); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 864-67 (N.D. Cal. 2025) ("The Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion[ LLC v. Ramirez*, 594 U.S. 413 (2021)].").

In *Facebook Tracking*, the Ninth Circuit held that "Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm or ***a material risk of harm*** to their interest in controlling their personal information." *Facebook Tracking*, 956 F.3d at 599 (emphasis added), *quoted in Krzyzek v. OpenX Technologies, Inc.*, - F. Supp. 3d -, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) and *Semien v. Pubmatic Inc.*, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026). That same reasoning applies here.

**a. The Ninth Circuit Does Not Impose a Sensitive or Confidential Information Requirement.**

Although Defendant contends that the FAC does not allege that Plaintiff shared any "personal information" with Defendant,[5] (Def.'s Mem. at 18:23-24), Defendant conveniently ignores Ninth Circuit precedent recognizing that the right to privacy dating back to the common law encompasses "the individual's control of information

[5] Here, the FAC alleges that a specific registered data broker named Magnite obtained Plaintiff's precise geolocation, (FAC ¶¶ 61-65), which is defined by the CCPA to mean "any data that is derived from a device and that is used to locate a consumer within a geographic area that is equal to or less than the area of a circle with a radius of 1,850 feet, except as prescribed by regulations." (Cal. Civ. Code § 1798.140(w).) Precise geolocation is sensitive personal information. (Cal. Civ. Code § 1798.140(ae)(1)(C).) Geolocation data that does not qualify as "precise geolocation" is still "personal information" under the CCPA. (Cal. Civ. Code § 1798.140(v)(1)(G).) The FAC alleges the other trackers collected geolocation data. (FAC ¶ 42.)

concerning his or her person" such as "an individual's likes, dislikes, interests, and habits" ***without imposing a confidential information requirement***. *Facebook Tracking*, 956 F.3d at 598; *Eichenberger*, 876 F.3d at 983; *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *4 n.4 (N.D. Cal. Sept. 30, 2025); *Camplisson v. Adidas America, Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) ("There is no requirement that … the information collected [via an online tracker] be sensitive"). "The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, [courts] examine whether the data itself is sensitive *and* whether the manner it was collected…violates social norms." *Facebook Tracking*, 956 F.3d at 603 (emphasis in original).

**b. Information Including Identifiers, Internet Activity Information Including Browsing History, and Geolocation Data Constitute a Consumer's Personal Information in California.**

The individual's control of information concerning the individual when visiting commercial websites has been codified in California law for nearly a decade. In 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*,[6] which recognizes that "Internet or other electronic network activity information, including, but not limited to, "[i]dentifiers such as a "unique personal identifier, online identifier, ***Internet Protocol address***, … or other similar identifiers," "Internet or other electronic network activity information, including, but not limited to, ***browsing history***, search history, and information regarding a consumer's interaction with an internet website application, or advertisement," and "***Geolocation data***" constitute a consumer's "personal information," (Civ. Code §

[6] Notably, the CCPA does not preempt California privacy law. *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (citing Cal. Civ. Code § 1798.175) ("the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control"). Thus, Defendant's contention that Plaintiff's interpretation cannot be correct because it would "nullify" the CCPA, (Def.'s Mem. at 30:19-31:12), is wrong. The Legislature included section 1798.175 precisely to avoid the CCPA from being used to preempt other California privacy laws.

1798.140(v)(1)(A), (F), & (G)) (emphasis added).

The fact that Californians have a reasonable expectation of privacy in their anonymity in using the Internet is strongly supported by the CCPA's enactment into California law nearly a decade ago. If a business can freely collect and sell the identifiers of Californians with impunity because Californians have no reasonable expectation of privacy in such personal information, then surely the CCPA would not exist. The CCPA's recognition of various types of electronic information relating to a consumer's use of an Internet website as a consumer's "personal information" supports a reasonable expectation of privacy in such personal information. *Cf. In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information such as plaintiff's IP address….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140).

Although Defendant contends that the collection of "generic device information," (Def.'s Mem. at 9:11-12), by the website at: https://www.nintendo.com (the "Website") causes Plaintiff no harm to her privacy interest, Defendant ignores the harm from de-anonymizing otherwise anonymous Website visitors whose identities are then used to target them for cross-site targeted advertising across the Internet. Anonymous speech including on the Internet has long been recognized in the U.S. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-73 (9th Cir. 2011); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093, 1093 (W.D. Wash. 2001).

Indeed, the identification of otherwise anonymous consumers, the gathering of consumers' data, and the correlation of such data through unique "fingerprinting" is precisely the rationale cited by multiple federal district courts regarding why software used on websites can constitute pen registers under section 638.51 of the Penal Code.

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3 (S.D.N.Y. Feb. 20, 2025); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 898 (S.D. Cal. 2025); *Mirmalek*, 2024 WL 5102709, at *3; *Shah v. Fandom, Inc.*, 754 F. Supp. at 928. Thus, de-anonymizing Website visitors has serious downstream consequences in terms of a consumer's privacy interests.

**c. Webpages Viewed Implicates Privacy Interests.**

Although Defendant contends that "interaction data," which is surely a euphemism for pages viewed by a website user, causes no harm to the privacy interests of Website visitors, (Def.'s Mem. at 9:11-12; 9:26), because the URLs visited does not constitute the contents of a website, (Def.'s Mem. at 24:11-13), Defendant is wrong.

The page URL viewed constitutes the contents of a website. *Haleon*, 815 F. Supp. 3d at 871 ("descriptive URLs … constitute 'contents'"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023). An individual's website browsing history is information that is "not like the 'outside of an envelope,' revealing the address and name of the recipient, but instead the contents of a letter." *Id.* at 936 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) and citing *Facebook Tracking*, 956 F.3d at 605 (holding that "full-string detailed URL[s]" are distinct from information discussed in *In re Zynga Privacy Litig.*) (noting that "URLs could divulge a user's personal interests, queries, and habits on third-party websites"). Surveillance of a website user's pages viewed without such user's prior consent is actionable. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 950 (N.D. Cal. 2023) ("intercepting information about, *e.g.*, pages viewed, search terms entered…is sufficiently similar in nature to intercepting information about, *e.g.*, a person's likes or dislikes (as in *Facebook [Tracking]*)"); *id.* at 956 (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (Aenlle-Rocha, J.), as amongst "cases which hold that ***information such as pages viewed*** … ***may be sufficiently private to implicate cognizable privacy interests****….*") (emphasis added); *United States v. Forrester*, 512 F.3d 500, 510 & n.6 (9th Cir. 2008);

*Brown*, 525 F. Supp. 3d at 1077-79 (allegations that Google collected a "profile of users" "collected secretly … without any notice to users" via "fingerprinting techniques, system data, and geolocation data" sufficient to plead a reasonable expectation of privacy because "users' Internet activity" "may reveal" "a user's private plans for the future (e.g., purchasing of an engagement ring)").

**5. The Ninth Circuit Recognizes that a Website Visitor Communicates with a Website and Sends Messages to a Website.**

The fact that an actual ***communication*** takes place back and forth between a website and a visitor of such website has been recognized by the Ninth Circuit. *Facebook Tracking*, 956 F.3d at 607. This is why visiting a website and browsing it and/or engaging in online searches can constitute online speech.

**6. The Website Has Embedded Third-Party Cookies to Surveil Plaintiff and Other Users of the Website Including When They Visit Other Websites and Build Profiles.**

The Website has embedded the software code of third parties to collect ***personal information*** from Plaintiff and other Website users via software code embedded into the Website. (FAC ¶¶ 32-95.) During Plaintiff's visit to the Website, third party cookies began to surreptitiously collect information about Plaintiff's device and Plaintiff's interactions with the Website immediately after the moment that Plaintiff landed on the Website. (FAC ¶¶ 28, 32, 35, 38, 40-41.) In particular, the FAC alleges that the third-party cookies tracked Plaintiff's user interactions on the Website, which includes Plaintiff's browsing history. (FAC ¶¶ 16, 19-20, 29-30, 41, 43-44, 46, 55-57, 96, 100, 132-13, 149, 161-162.)

The reason why such entities have embedded their code on the Website so that their third-party cookies are downloaded onto the devices and browsers of Website visitors and stored there is because they are harvesting visitor data, building profiles of consumers, and monetizing "segmented" audiences *via* targeted advertising and marketing campaigns. (FAC ¶¶ 32-95.)

Indeed, Defendant's Privacy Policy (with a revision date of February 2023) (the "Privacy Policy"), which was the applicable version of such Privacy Policy on the date of Plaintiff's August 2024 visit to the Website, freely acknowledges that the Website ***automatically*** collects personal information about consumers through the use of cookies and similar tracking technologies to serve targeted advertising upon users of the Website. (FAC ¶¶ 20-24.)

"[I]t does not matter whether [Plaintiff] had a 'reasonable expectation of privacy' in the information collected … because the privacy violation extends beyond the collection of just his IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025).

**a. The FAC Alleges that Plaintiff Conducted a Search on the Website.**

Although Defendant contends that the FAC provides virtually no information about Plaintiff's visit to the Website, (Def.'s Mem. at 12:4-5), and questions whether Plaintiff "typed any text into the Website," (*id.* at 12:11; *see also id.* at 17:16), the FAC, liberally construed,[7] can and should be interpreted to allege that Plaintiff entered a confidential search in the search feature of the Website.[8] (FAC ¶¶ 147-149, 152, 158.)

---

[7] "On a motion to dismiss under FRCP 12(b)(6), the court must assume the truth of the factual allegations in the complaint, draw reasonable inferences from the allegations in plaintiff's favor, and construe the complaint liberally." The Rutter Group, *Federal Civil Procedure Before Trial* ¶ 9:213, at 9-87 (2026) (citing *National Rifle Ass'n of Amer. v. Vullo*, 602 U.S. 175, 181 (2024)); *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[8] Defendant is surely well aware of Plaintiff's averment that she "used [the Website's] search bar feature to search for a certain category of video games that [Plaintiff] was interested in learning about to potentially purchase." (Cantu Decl. of 5/21/25 ¶ 2; Doc. 1-3; Page ID #305.) Such averment is contained in Plaintiff's declaration filed while the instant action was still pending in state court, which was attached as an exhibit to Defendant's Notice of Removal. Plaintiff should be allowed an opportunity to amend the FAC insofar as the Court deems it necessary to expressly plead Plaintiff's use of the search bar feature on the Website.

Indeed, Plaintiff seeks injunctive relief precisely because Plaintiff intends to continue as before to "search for information and content related to video game products and services" on the Website. (FAC ¶ 158.) This allegation only makes sense if Plaintiff has previously searched for video game related information and content through the Website.

Although Defendant questions whether Plaintiff viewed "a product page," (Def.'s Mem. at 17:17), the FAC can and should be interpreted as alleging that Plaintiff visited various webpages whose URLs visited (*i.e.*, Website contents) were recorded by third-party tracking cookies used on the Website, (FAC ¶¶ 147-149, 152).

**b. Plaintiff's Expert Analysis in December 2024 Is Close Enough in Time to Plaintiff's Visit in August 2024 to Be Viewed as Contemporaneous.**

Although Defendant contends that Plaintiff's computer expert conducted an analysis of the Website on "dates other than the dates that Ms. Cantu visited the Website," (Def.'s Mem. at 13:1-13), such expert's analysis initially occurred on December 13, 2024, (FAC ¶¶ 44, 55, 58, 68, 74, 81, 84, 90, 92), which is only about four months after Plaintiff's visit in August 2024, (FAC ¶ 101). This timeframe is relatively contemporaneous. And, such expert's subsequent visits to the Website on May 20, 2025 and July 20, 2025 confirm Defendant's continuing use of third-party cookies on the Website. (FAC ¶ 32.) Indeed, Defendant does not contend that it has ceased using third-party cookies on its Website throughout the timeframe when Plaintiff's expert visited and analyzed the Website. Thus, it is reasonable to infer that Plaintiff's expert experienced the same conditions of the Website that Plaintiff experienced.

**7. Defendant Violated Its Statutory Duties to Disclose Its Personal Information Gathering Practices Via a Conspicuous Notice at Collection that Disclosed that Its Website Downloaded Third Party Cookies onto the User's Device That Would Remain Active When the**

**User Visited Other Websites.**

Although Defendant relies heavily upon the existence of its Privacy Policy containing various privacy-related disclosures, (Def.'s Mem. at 9:22-25; 15:10-11; 18:10-12), Defendant's analysis is misleading.

"A duty to disclose a material fact can arise if … it is imposed by statute…." *Zeichner v. Nord Security Inc.*, 2024 WL 4951261, at *6 (N.D. Cal. Dec. 2, 2024) (quoting *Rattagan*, 17 Cal.5th at 40). Here, the CCPA and its regulations imposed upon Defendant statutory duties to: (i) to conspicuously disclose material facts about its collection of personal information from California consumers who used the Website to avoid misleading such consumers about the nature of its personal information collection practices on the Website in August 2024 (during Plaintiff's visit to the Website); and (ii) give consumers the option to opt out of targeted advertising.

Defendant was required to provide a conspicuous "Notice at Collection" of personal information in compliance with the CCPA, (Cal. Civ. Code § 1798.100(a)(1)-(3)), and California's regulation at 11 C.C.R. § 7012 at that time, which are part of the California Consumer Privacy Act Regulations. 11 C.C.R. § 7000(a). Such Regulations define "Notice at Collection" to mean "the notice given by a business to a consumer at or before the point at which a business collects personal information from the consumer as required by Civil Code section 1798.100, subdivisions (a) and (b), and specified in these regulations." 11 C.C.R. § 7001(q).

Section 7012 provides, "The Notice at Collection shall be made readily available where consumers will encounter it at or before the point of collection of any personal information." 11 C.C.R. § 7012(c). Such regulation provides an "[i]llustrative example" as follows: "When a business collects consumers' personal information online, it may post a ***conspicuous*** link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." 11 C.C.R. § 7012(c)(1) (emphasis added). Section 7012 provides, "If a business does not give the Notice at Collection to the consumer at or before the point of collection of their

personal information, the business shall not collect personal information from the consumer." 11 C.C.R. § 7012(d).

Although Plaintiff visited the Website in August 2024, Plaintiff's investigation has determined that the Website failed to provide a ***conspicuous*** Notice at Collection during such visit such as a conspicuous cookie banner on the homepage of the Website including what is known as a consent management platform ("CMP") displayed at the outset of her visit to the Website ***notifying Plaintiff that third-party cookies had been already downloaded onto Plaintiff's browser or device immediately upon her visit to the Website and that such third-party cookies would enable such technologies to track Plaintiff's browsing of other websites***. (FAC ¶¶ 103-104.) The Website similarly failed to provide Plaintiff with opt out options with respect to those third-party cookies tracking Plaintiff's browsing of other websites. *Id.*

Plaintiff reasonably relied upon such omission in browsing the Website. (*Id.* ¶ 106.) Defendant's violation of its statutory obligation to disclose its personal information gathering practices via a ***conspicuous*** Notice at Collection that fully disclosed the ability of downloaded third party cookies to track Plaintiff and other Website users while visiting other websites is highly offensive to a reasonable person, which support Plaintiff's position that she was harmed by Defendant's conduct, which deprived her of the ability to control personal information regarding her digital activity and profile. *Brown*, 525 F. Supp. 3d at 1077-79 (allegations that Google collected a "profile of users" "collected secretly … without any notice to users" via "fingerprinting techniques, system data, and geolocation data" sufficient to plead a reasonable expectation of privacy because "users' Internet activity" "may reveal" "a user's private plans for the future (e.g., purchasing of an engagement ring)" and plaintiffs "could have reasonably assumed that Google would not receive their data … based on Google's representations").

Although Defendant contends that section 7012(c) "contemplates that an online business may satisfy the 'notice at collection' requirement referenced in the FAC by

posting a conspicuous link to the notice" on the introductory page of the business's website and on all webpages where personal information is collected, (Def.'s Mem. at 20:11-14), Defendant notably fails to contend that it did so. That is, ***Defendant fails to contend that it posted a conspicuous link to the "Notice at Collection" on its homepage and all webpages where a visitor's personal information was collected while using the Website***. Even had Defendant made such argument, which is disputed, such factual issue could not be resolved as a matter of law based on the pleadings alone.

Furthermore, regardless of the disclosures of online tracking contained within its Privacy Policy, Defendant ignores that the FAC does not allege that Plaintiff read the Privacy Policy itself. To the extent that Defendant implies that Plaintiff read the Privacy Policy, Defendant is mistaken.[9] No such factual allegation exists.

Thus, Defendant seeks to obfuscate the fact that it violated the CCPA by failing to conspicuously disclose the full effect that the third-party cookies downloaded from its Website would have on Website visitors like Plaintiff.[10]

Such omission has consequences here. "As the California Attorney General's website explains, the CCPA requires that companies give users the choice to opt out of any collection of personal information for 'cross-context behavioral advertising, which is the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's online activity across numerous websites." *Wiley*, 2025 WL 3654085, at *4 (citing https://oag.ca.gov/privacy/ccpa).

"When evaluating Californians' reasonable privacy expectations, the CCPA's provisions are highly relevant 'customs, practices, and circumstances,' because they

---

[9] Plaintiff disagrees with Defendant's contention that the FAC "does not allege that [the cookie-related] disclosures [in Defendant's Privacy Policy] are inadequate…." (Def.'s Mem. at 13:11-12.) The FAC alleges that third-party cookies are deployed on the user's browser immediately upon webpage loading without user consent. (FAC ¶ 32.) That activity is not disclosed in the Privacy Policy.

[10] Although Defendant contends that the "CCPA is an opt-*out* regime," (Def.'s Mem. at 20:11) (emphasis in original), Defendant conveniently ignores that a key requirement for such regulatory scheme is a ***conspicuous*** notice to consumers. Without such notice, how can a reasonable consumer be expected to opt-out of the collection, use, sharing, and selling of the consumer's personal information?

provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations about their ability to opt out of websites' collection of data for profit." *Id.* at *4 (quoting *Facebook Tracking*, 956 F.3d at 602). "Today, when California users visit a website, they can expect to see a popup screen giving them the option to opt out of various types of tracking." *Id.*

As mentioned above, advance notice and consent are relevant factors in determining the reasonableness of the expectation of privacy. *Hernandez,* 47 Cal.4th at 287.

Thus, the Court should follow *Wiley*'s holding by considering the CCPA's provisions as highly relevant "customs, practices, and circumstances" in evaluating Californians' reasonable privacy expectations. The CCPA's provisions provide Californians with the reasonable expectation that they will have some control over their data and shapes users' expectations about their ability to opt out of websites' collection of data for profit.

Defendant's reliance upon California trial court orders, (Def.'s Mem. at 15:26-16:3), is misplaced because such orders provide no guidance of California law. *Neary v. Regents of the University of California*, 3 Cal.4th 273, 282 (1992).

**8. *Popa v. Microsoft Corp.* Is Distinguishable.**

Defendant's reliance upon *Popa v. Microsoft Corp.*, 153 F.4th 784, 786 (9th Cir. 2025) (Def.'s Mem. at 21:7-8), is misplaced for several reasons. First, *Popa* did not create a new rule for Article III standing, which, in fact, confirmed that *Facebook Tracking* remains good law. *Krzyzek*, 2026 WL 206855, at *3 n.5 (citing *Dellasala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025); *Camplisson*, 809 F. Supp. 3d at 1106; *Semien*, 2026 WL 216333, at *5 n.5; *Deivaprakash*, 2025 WL 2779193, at *1.

To the extent that *Popa* conflicts with Ninth Circuit precedent recognizing that the right to privacy dating back to the common law encompasses "the individual's control of information concerning his or her person" such as "an individual's likes, dislikes,

interests, and habits" without imposing a confidential information requirement, *Facebook Tracking*, 956 F.3d at 598; *Eichenberger*, 876 F.3d at 983, the Court should follow *Facebook Tracking*.

Second, *Popa* is factually distinguishable because the information collected therein was far less intrusive because it involved only data generated during a visit to a single website; whereas, here, ***third-party cookies are alleged to track users across the Internet***. (FAC ¶¶ 16, 19-20, 29-30, 41, 43-44, 46, 55-57, 96, 100, 132-13, 149, 161-162); *Krzyzek*, 2026 WL 206855, at *3; *Semien*, 2026 WL 216333, at *5; *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 n.3 (N.D. Cal. Oct. 17, 2025) ("The scope of the alleged tracking in this case is materially more invasive than the limited tracking at issue in the Ninth Circuit's recent decision in *Popa*….Plaintiffs allege that Sovrn compiled detailed profiles by tracking their interactions across many websites…"). Tracking cookies "are capable of tracking [users'] browser[s] across other sites and building up a profile of [users'] interests." *Haleon*, 815 F. Supp. 3d at 867.

Third, in *Haleon*, the federal district court distinguished *Popa* because the plaintiff in *Popa* "did not challenge the storage and/or transmission of cookies…." *Haleon*, 815 F. Supp. 3d at 866. Thus, the nature of the privacy invasion was far more serious therein just as it is serious here unlike in *Popa*.

**9. Plaintiff Did Not Consent to Defendant's Conduct.**

Although Defendant contends that Plaintiff consented to being tracked by third-party cookies downloaded from its Website onto Plaintiff's browser or device, (Def.'s Mem. at 14:11-16:11), Defendant has failed to satisfy its burden of proving consent as a matter of law.[11] As mentioned above, the Ninth Circuit has held that "***foreseeability of***

[11] It is the defendant's burden to prove consent. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

***monitoring is insufficient to infer consent***".[12] *Staves*, 383 F.3d at 981 (emphasis added); *In re Google Inc.*, 2013 WL 5423918, at *12; *Shah*, 754 F. Supp. 3d at 932.

Moreover, "[t]he critical question with respect to implied consent is whether the parties whose communications were intercepted had ***adequate notice*** of the interception." *In re Google*, 2013 WL 5423918, at *12 (emphasis added); *see Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (interpreting section 631(a) of the California Penal Code as requiring "prior consent," and predicting that the California Supreme Court would interpret such statute in such manner) ("Based on these statements by the California Supreme Court, we conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added).

The FAC alleges that third-party cookies were "operational immediately upon Website loading before Plaintiff even had an opportunity to review either the cookie banner or the CMP embedded therein…." (FAC ¶¶ 28, 32, 35, 38, 40-41); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025). The foregoing allegations indicate that "prior consent" was impossible here. Indeed, the FAC expressly alleges Plaintiff's lack of consent to Defendant's actions, (FAC ¶¶ 32, 34-35, 37, 39-41, 107, 110, 114, 132, 147-148, 150, 154, 156), which this Court is required to take as true.

"'Consent is … generally limited to the specific conduct authorized.'" *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1048 (S.D. Cal. 2023) (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to

[12] Defendant's reliance upon *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *5 n.3 (S.D. Cal. May 8, 2024), is misplaced because: (i) *Thomas* is inconsistent with *Staves*, 383 F.3d at 981; and (ii) *Thomas* did not address the CCPA's conspicuous notice requirement.

data collection does not extend to data disclosure). As the California Supreme Court has explained:

> "[W]e adhere to the view suggested in *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200 (1998)]: privacy … is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."

*Sanders v. Am. Bd. Co., Inc.*, 20 Cal.4th 907, 915-16 (1999) (recognizing an "expectation of limited privacy"); *Javier*, 2021 WL 940319, at *2 ("[C]onsent 'is not an all-or-nothing proposition.'") (quoting *In re Google*, 2013 WL 5423918, at *12).

**B. The FAC Plausibly Alleges a Violation of Section 638.51 of the Penal Code.**

Defendant's contention that section 638.51 of the California Penal Code does not apply to anything besides "telephone technologies," (Def.'s Mem. at 29:16), is wrong. *Krzyzek*, 2026 WL 206855, at *9 ("Numerous courts in this district and elsewhere have already found pixels to be 'pen registers' at the pleading stage").

Defendant's reliance on California trial court orders, (Def.'s Mem. at 28:16-23; 30:9-17; 30:23-26; 31:22-32:2), is misplaced as they provide no guidance of California law. *Neary*, 3 Cal.4th at 282.

**1. The Common Law Rule of Lenity Does Not Apply Here.**

Although Defendant relies on the common law rule of lenity to question whether section 638.51 applies to internet communications, (Def.'s Mem. at 32:6-33:10), Plaintiff disagrees. *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025) ("[T]he statute contains no grievous ambiguity: its language, structure, history, and purpose are sufficiently clear, and they leave no need for the Court to merely speculate about its applicability. The statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here."); *Deivaprakash*, 798 F. Supp. 3d at 1107-08; *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *6 (N.D. Cal. Sept. 2, 2025); *Riganian v. LiveRamp Holdings, Inc.*,

791 F. Supp. 3d 1075, 1094 (N.D. Cal. July 18, 2025). Based on Penal Code § 4, "although true ambiguities are resolved in a defendant's favor, ***an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent***." *People v. Avery*, 27 Cal.4th 49, 58 (2002) (emphasis added) ("The rule [of lenity] applies only if the court can do no more than ***guess*** what the legislative body intended; there must be an ***egregious ambiguity*** and uncertainty to justify invoking the rule.") (emphasis added). "In other words, 'the rule of lenity is a tie-breaking principle, of relevance when ' 'two reasonable interpretations of the same provision stand in relative equipoise ....' ' ' " *People v. Braden*, 14 Cal.5th 791, 824 (2023).

Plaintiff submits that a contrary legislative intent can be "fairly discern[ed]" here. The legislative history of the USA Patriot Act of 2001 ("Patriot Act"), Pub. L. No. 107–56 § 216, 115 Stat. 272 (2001), strongly indicates that the trap and trace device definition was intended to cover software processes that collect information including Internet traffic. 147 Cong. Rec. S10990-02, S11000, S11006, S11055, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy); 147 Cong. Rec. H7159-03, H7165, H7196, H7197, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner); *see also* House Report No. 107-236(I), at *60 (Oct. 11, 2001). The "trap and trace device" definition in section 638.50(c) of the Penal Code was copied from the federal law definition of such term.

The reason why such provisions are so similar is because the Pen Register Act sets a "floor," *i.e.*, a minimum standard that states can exceed with more stricter privacy laws, but they cannot enact "less restrictive legislation" as confirmed by the Wiretap Act's legislative history. Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) (citing S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968)).

And, sections 638.50 and 638.51 were enacted into law in 2015, which was 14 years after the Patriot Act had been enacted by Congress and well after Internet websites became ubiquitous in American society.

### C. The Intrusion Upon Seclusion Claim Is Plausibly Alleged.

Plaintiff's analysis of her reasonable expectation of privacy is set forth above. *See supra*, Section I.A.

#### 1. The FAC Pleads Highly Offensive Conduct.

As an initial matter, Plaintiff submits that the question whether Defendant's conduct is "highly offensive" should not be decided as a matter of law at the pleading stage. *Facebook Tracking*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage. Plaintiffs have identified sufficient facts to survive a motion to dismiss."); *Brown*, 685 F. Supp. 3d at 941 ("The Court cannot find, as a matter of law, that the data collection here was not highly offensive."); *Greenley*, 684 F. Supp. 3d at 1046 (agreeing with plaintiff that seriousness of invasion is question for finder of fact); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d at 946 ("Whether the conduct was highly offensive can rarely be resolved at the pleading stage.") (citing *Facebook Tracking*, 956 F.3d at 606); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (Whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury.") (internal quotations omitted); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) ("That question is best left for a jury.").

Assuming *arguendo* that the Court decides to resolve the question whether the conduct was highly offensive via the instant Motion, at minimum, the Court should find an "egregious breach plausible." *Greenley*, 684 F. Supp. 3d at 1047.

Although Defendant contends that the FAC does not allege the disclosure of any "personal information," (Def.'s Mem. at 18:23), *Facebook Tracking*, *supra*, the Ninth Circuit held that allegations of data collection performed "in order to receive and

compile [the plaintiffs'] personally identifiable browsing history" "no matter how sensitive or personal" constituted sufficient allegations of injury for purposes of Article III standing." 956 F.3d at 598, *quoted in Deivaprakash*, 2025 WL 2779193, at *4 n.4.

Numerous federal courts have recognized the viability of intrusion upon seclusion claims involving similar allegations. *See, e.g.*, *D'Antonio v. Smith & Wesson Inc.*, - F. Supp. 3d -, 2026 WL 446310, at *3 (N.D. Cal. Feb. 17, 2026); *Politico*, 2026 WL 323269, at *5; *Shah v. Myfitnesspal, Inc.*, 2026 WL 216334, at *6; *Semien*, 2026 WL 216333, *7; *Krzyzek*, 2026 WL 206855, at *5; *Gilligan*, 2026 WL 32259, at *3; *Wiley*, 2025 WL 3654085, at *6; *Casillas v. Six Flags Enter. Corp.*, 812 F. Supp. 3d 1016, 1029-30 (C.D. Cal. 2025) (Marshall, J.); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *7-*11 (C.D. Cal. Dec. 4, 2025) (Williams Court, J.); *Pemberton*, 2025 WL 3268404, at *5; *Selby*, 2025 WL 2950164, at *3; *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *15 (N.D. Cal. Oct. 16, 2025); *Haleon*, 815 F. Supp. 3d at 868; *Riganian*, 791 F. Supp. 3d at 1085-89; *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025); *Greenley*, 684 F. Supp. 3d at 1047; *de Ayora*, 2025 WL 3707561, at *5. Defendant has failed to address the foregoing case authority.

**D. The Section 631(a) Claim Is Plausibly Alleged.**

The claim alleging a violation of § 631(a) of the California Penal Code is plausibly alleged. First, Defendant's contention that the claims based on the violation of section 631(a) must be dismissed because a person's browsing history is record information, (Def.'s Mem. at 23:22-25:18), and not the contents of a communication is wrong. *Haleon*, 815 F. Supp. 3d at 871 ("descriptive URLs … constitute 'contents'"); *Brown*, 685 F. Supp. 3d at 935-36. Plaintiff's browsing history is information that is "not like the 'outside of an envelope,' revealing the address and name of the recipient, but instead the contents of a letter." *Id.* at 936 (quoting *In re Zynga Privacy Litig.*, 750 F.3d at 1108 and citing *Facebook Tracking*, 956 F.3d at 605 (holding that "full-string detailed URL[s]" are distinct from information discussed in *In re Zynga Privacy Litig.*) (noting that "resulting URLs could divulge a user's personal interests, queries, and

habits on third-party websites”).

Second, the FAC plausibly alleges that for purposes of section 631(a), Plaintiff's communications were intercepted while “in transit.” (FAC ¶ 151.) Notably, Defendant's Privacy Policy admits that the Website uses “cookies” or similar technologies to collect personal information about its Website visitors. (FAC ¶ 23.) It is reasonable to infer from such allegations that the cookies and other software technologies are ***automated*** and do not require any human intervention. And, it is beyond dispute that such cookies are third-party cookies. (FAC ¶¶ 16, 19-20, 29-30, 41, 43-44, 46, 55-57, 96, 100, 132-13, 149, 161-162.) The FAC alleges that “Third Parties” “routed Plaintiff's electronic communications to Third Parties' servers.” (FAC ¶ 155.) “Defendant's arguments otherwise would require the Court to engage in fact finding inappropriate for this stage of the proceedings.” *Heiting v. Taro Pharmaceuticals USA, Inc.*, 2024 WL 3738055, at *4 (C.D. Cal. July 31, 2024) (Peace Garnett, J.).

Numerous courts (including multiple federal circuit courts) have recognized that automatic routing software can satisfy the contemporaneous transmission requirement of either the Wiretap Act or section 631(a). *United States v. Councilman*, 418 F.3d 67, 85 (1st Cir. 2005) (en banc) (“almost a year before [defendant's] alleged conduct, the academic literature had noted that . . . ‘automatic routing software’ that automatically forwarded duplicate copies of a user's messages *would* qualify as ‘interception of E-mail within the prohibition of the ECPA.’”)[13] (emphasis in original).

Third, Defendant's assumption that the fourth clause of section 631(a) imposes an “abetting” legal standard, (Def.'s Mem. at 27:3-26), is wrong because the fourth clause of section 631(a) omits the word “abet” so the statute does not impose an “aid and abet” requirement under California criminal law. *People v. Dole*, 122 Cal. 486, 492 (1898) (“The word ‘aid’ does not imply guilty knowledge of felonious intent, whereas the

[13] A district court in the Ninth Circuit has noted that “*Councilman* is consistent with the Ninth Circuit's “contemporaneous” requirement articulated in *Konop [v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)].” *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1081 (N.D. Cal. 2015).

definition of the word 'abet' includes ***knowledge*** of the wrongful purpose of the perpetrator, and counsel and encouragement in the crime.") (emphasis added); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) ("the word 'abet,' which encompasses the intent required by law, ... is arcane and its full import unlikely to be recognized by modern jurors.... '[A]bet' means to encourage or facilitate, and ***implicitly to harbor an intent to further the crime encouraged***.") (emphasis added). *Dole* and *Beeman* irrefutably demonstrate that the term "aids" reflects conduct that does not reflect the criminal state of mind, which is reflected by the term "abet." ***This Court is bound to follow the foregoing California published appellate authority***.

Indeed, in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) (Anello, J.), a federal district court stated:

> "Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause. Defendant provides no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'"

*Id.* at 1130. *Cousin* was followed for such proposition in *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) ("The Court finds the approach in *Cousin* more persuasive because it more closely follows the language of the statute.") and most recently by *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) (holding that section 631(a) "does not require that a party aid *and* abet") (emphasis in original). Thus, *Cousin* is not an aberration in its interpretation of the fourth clause of section 631(a).

The FAC's allegations allege Defendant's knowledge/intent. *Heiting*, 2024 WL 3738055, at *6. The FAC alleges that Defendant "enabled" the "rout[ing] of "Plaintiff's electronic communications to Third Parties' servers." (FAC ¶ 155.) As was the case in *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), the defendant website merchant "violated section 631 by ***enabling*** [a third party's] wrongdoing." *Id.* at *2 (emphasis added); *Casillas*, 812 F. Supp. 3d. at 1031.

Dated: May 4, 2026

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*

Scott. J. Ferrell
Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief does not exceed 25 pages, which complies with the Court's length requirements in the Court's Standing Order for Newly Assigned Civil Cases filed in the instant action on March 13, 2026. *See* Doc. 13 at 11:21-23; Page ID #703.

Dated: May 4, 2026

*/s/ Scott J. Ferrell*
Scott J. Ferrell