**PERKINS COIE LLP**
Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: +1.310.788.9900
Facsimile: +1.310.788.3399

Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

David S. Watnick, Bar No. 305909
DWatnick@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile: +1.503.727.2222

*Attorneys for Defendant Nintendo of America Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TANYA CANTU,

Plaintiff,

v.

NINTENDO OF AMERICA INC.,

Defendant.

Case No. 2:26-cv-01520-SPG-AGR

**REPLY IN SUPPORT OF NINTENDO OF AMERICA INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

Date: June 17, 2026
Time: 1:30 p.m.
Courtroom: 5C
Judge: Hon. Sherilyn Peace Garnett

# TABLE OF CONTENTS


INTRODUCTION .......... 1

I. Plaintiff's claims are all barred because she is a tester and serial litigant that consented to the alleged data collection. .......... 2

II. Plaintiff fails to state an intrusion claim because she does not allege a reasonable expectation of privacy or highly offensive conduct. .......... 5

- A. The Opposition does not rectify Plaintiff's failure to allege a reasonable expectation of privacy in information shared on Nintendo's website. .......... 6
- B. The Opposition does not identify any highly offensive conduct. .......... 9

III. The Opposition does not save Plaintiff's wiretapping claim. .......... 10

- A. Ms. Cantu does not allege that Nintendo collected the "contents" of any communication. .......... 10
- B. Plaintiff's wiretapping claim fails to allege the interception of the contents of a communication *in transit*. .......... 11
- C. The Opposition does not revive the aiding and abetting theory. .......... 12

IV. The Trap and Trace Act does not apply to the alleged conduct. .......... 13

V. The rule of lenity requires that ambiguity in criminal statutes be construed in Nintendo's favor. .......... 14

VI. Ms. Cantu's claims should be dismissed with prejudice. .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*,
2015 WL 4163008 (C.D. Cal. July 9, 2015) ....................13

*Balabbo v. Wildflower Brands, LLC*,
2026 WL 1122773 (Cal. Super. Ct. Apr. 6, 2026) ....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ....................7

*Blalock v. EquipmentShare.com Inc.*,
No. 30-2025-01508739-CU-MC-CJC (Orange Cnty. Super. Ct., Feb. 25, 2026) ....................13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................10

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023), *judgment entered*, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023) ....................3

*C.R. Educ. and Enf' Ctr. v. Hosp. Props. Tr.*,
867 F.3d 1093 (9th Cir. 2017) (ADA case) ....................2

*Cammorata v. Sonifi Sols., Inc.*,
2026 WL 500856 (Cal. Super. Ct. Feb. 18, 2026) ....................13

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ....................14

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ....................6

*Doe v. Talkiatry Mgmt. Servs., LLC*,
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) ....................12

*Fed. Election Comm'n v. Cruz*,
596 U.S. 289 (2022) ....................2, 3

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....................10

*Harris v. City of Kent*,
2023 WL 6784361 (9th Cir. Oct. 13, 2023) .......... 15

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .......... 2

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) .......... 11, 12

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 11, 12

*Heiting v. Wildflower Brands, LLC*,
No. 25STCV18507 (L.A. Cnty. Super. Ct., Apr. 16, 2026) .......... 13

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) .......... 4

*In re Facebook Tracking Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 9, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

*Jones v. Total Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 11

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) .......... 2

*Leger v. Kalitta*,
2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) .......... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 2, 3

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 6, 7, 9

*Ramirez v. County of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) .......... 7

*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 3, 4

*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) .......... 3

*Rodriguez v. IMDB.com, Inc.*, 2026 WL 886927 (Cal. Super. Ct. Mar. 24, 2026) .......... 13

*S. Shore LLC v. Wells Fargo Bank, N.A.*, 2024 WL 3513503 (C.D. Cal. Apr. 25, 2024) .......... 14

*Saeedy v. Microsoft Corp.*, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 7

*Santoro v. Tower Health*, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024), *reconsideration denied*, 2024 WL 4771398 (E.D. Pa. Nov. 13, 2024) .......... 6

*Schallert v. Orkin LLC*, 2025 WL 4332757 (Cal. Super. Ct. Dec. 15, 2025) .......... 13

*Schallert v. Palo Alto Networks, Inc.*, 2026 WL 754028 (Cal. Super. Ct. Mar. 6, 2026) .......... 13

*Scharon v. Paramount Glob.*, 2025 WL 2996812 (Cal. Super. Ct. Oct. 3, 2025) .......... 13

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) .......... 5

**STATUTES**

Cal. Penal Code § 631 .......... 14

Cal. Penal Code § 638.50 *et seq.* .......... 14

**RULES**

Fed. R. Civ. Pro. 12(b) .......... 1

**OTHER AUTHORITIES**

*Wright & Miller's Federal Practice & Procedure* § 3531.5 (3d ed. June 2024 Update) ........................................................................................4

## INTRODUCTION

Plaintiff's Opposition confirms that the First Amended Complaint ("FAC") should be dismissed with prejudice. First, Plaintiff's Opposition does not cure the FAC's threshold defect: Plaintiff is a professional "tester" who intentionally visited Nintendo's website expecting to encounter the same routine tracking technologies she has challenged in scores of similar lawsuits. That admission defeats the premise of every claim she asserts, which all require her to adequately allege unconsented conduct, defeated expectations, or an invasion of a protected privacy interest. Plaintiff alleges the opposite. She went looking for the very conduct she now calls surprising and unwelcome, and which Nintendo's Privacy Policy disclosed all along.

Plaintiff's other arguments fare no better. She asks the Court to save her intrusion claim by inferring that she typed unspecified information into Nintendo's website, that unnamed third parties combined unidentified data from unspecified sources, and that Nintendo thereby engaged in highly offensive conduct. But Fed. R. Civ. Pro. 12(b) requires Plaintiff to make plausible factual allegations in her complaint. She has not done so and cannot now cure her failure through abstract conjecture.

Nor can Plaintiff resuscitate her wiretapping claim from the FAC's utter failure to allege the basic elements of that claim: there are simply no allegations in the FAC that Nintendo intercepted the contents of communications in transit or intentionally assisted third parties in doing so. Nor can Plaintiff revive her Trap and Trace claim—the Opposition musters only a seven-line response to Nintendo's showing that the statute does not apply to ordinary website analytics and advertising tools, and a growing weight of authority rejects precisely the expansion Plaintiff urges. At a minimum, the CIPA provisions at issue in these claims are ambiguous, and must be construed in Nintendo's favor under the rule of lenity.

Because Plaintiff has already amended once, and the Opposition fails to cure the defects underlying her claims, the Court should dismiss the case with prejudice.

## ARGUMENT

### I. Plaintiff's claims are all barred because she is a tester and serial litigant that consented to the alleged data collection.

The claims advanced in the FAC sound in privacy and thus require Plaintiff to prove surreptitious conduct, unconsented data collection, and defied expectations. *See* MTD at 4–15. Yet, the unmistakable conclusion from the FAC's allegations is that when Ms. Cantu made her single visit to Nintendo's website in August 2024, she visited as a "tester" expecting to encounter tracking technologies—just as she allegedly has in countless other nearly identical lawsuits she has filed. *See id.* By willfully visiting Nintendo's website as a "tester," she consented to any alleged tracking and lacked any reasonable expectation of privacy—thus she cannot plausibly allege the elements of her claims. *See id.* [1]

The Opposition's arguments to the contrary—that a "tester" like Plaintiff can nevertheless maintain her claims, Opp'n at 1–4—are unavailing.

The Opposition principally attempts to rescue Plaintiff's claims by analogizing to other "tester" cases for violation of the Americans with Disabilities Act, Fair Housing Act, and First Amendment. *See* Opp'n at 1–4 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (FHA case); *C.R. Educ. and Enf' Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1101–02 (9th Cir. 2017) ("*CREEC*") (ADA case); *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (same); *Fed.*

[1] Additionally, the Opposition repeatedly conflates Article III standing and statutory standing. At this time Nintendo does not argue that Plaintiff has failed to allege a concrete injury sufficient to confer Article III standing. Rather, Plaintiff's alleged injuries (mere data collection to which she now objects) do not state a claim under the statutes and common law tort doctrines at issue. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("statutory standing" defect is not jurisdictional and does not impact Court's power to adjudicate the case). Nintendo also reserves the right to move to compel arbitration of Plaintiff's claims in the event it determines she assented to arbitration, though its thorough investigation to date has not identified evidence of such.

*Election Comm'n v. Cruz*, 596 U.S. 289, 296–97 (2022) (First Amendment case)).

As another Central District decision recently held in a similar case brought by Plaintiff's counsel, this argument fails because "the tester plaintiffs' expectations and actions" in the Opposition's cited cases "had no bearing on whether they had been injured." *Rodriguez v. Autotrader.com, Inc.*,2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025) ("*Autotrader I*"). "The same cannot be said here. Plaintiff's injury squarely depends on her expectations, as an invasion of privacy requires a reasonable expectation of privacy to have been violated." *Id.* at *3 (observing that "Plaintiff is a tester that seeks out invasions of privacy" and "[i]t was no accident that she visited the Website and allegedly had her privacy violated"); *see also Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim of "tester" plaintiff because she "fully expected" that her data would be collected) , judgment entered, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023).

This is sensible. It makes no difference if an individual that has been denied legally mandated disability accommodations, access to housing, or free speech rights expected to encounter a legal violation; they experience the same harm in either case. But an individual—like Ms. Cantu—that complains of tracking and data collection technology she expected to encounter when consensually visiting a website does not state a claim for violation of statutes and common law torts that exist specifically to protect individuals from nonconsensual, unexpected surveillance. *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) ("*Autotrader II*") (recognizing that ADA and First Amendment plaintiffs' injuries are the same "regardless of their expectations or intentions").[2]

For all these reasons, Plaintiff's admitted status as a "tester" alone forecloses

[2] It is for this express reason that *Autotrader II* directly distinguished *Cruz*. *See id.*; *cf. also* Opp'n at 3 (inaccurately asserting that *Autotrader II* distinguished *Cruz* as a "First Amendment" case "without elaboration").

all her claims.[3] *See, e.g.*, *Autotrader II*, 2025 WL 1085787, at *1 (dismissing claims brought by "tester that visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed"). But Nintendo's argument, and Plaintiff's problems, go even further.

Plaintiff's history as a serial litigant, having filed at least four equivalent cases *before* this action challenging alleged website tracking practices, underscores that she voluntarily went to Nintendo's website expecting to be tracked, and proceeded anyway. *See* MTD at 11 n.3. Similarly, the FAC does not plausibly allege that Plaintiff visited Nintendo's website for any bona fide reason; i.e., the FAC indicates Plaintiff visited the website *solely* as a tester looking to manufacture a claim, which further dooms her case. *Autotrader Ii*, 2025 WL 1085787, at *1.[4] Plaintiff's only attempt to allege otherwise is that she purportedly "is . . . genuinely interested in the products, services, and information available on Defendant's Website[.]" FAC ¶ 102. But the Court need not accept as true such conclusory allegations unsupported by the facts pleaded in the complaint. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). And, in any event, this conclusory assertion says nothing about Plaintiff's *contemporaneous* purpose when she allegedly visited the Website in August 2024.

Additionally, Plaintiff proceeded to use Nintendo's website despite Nintendo's Privacy Policy, which "freely acknowledges" that the Website uses "cookies and similar tracking technologies to serve targeted advertising[.]" Opp'n

---

[3] Plaintiff also argues that Nintendo fails to consider that the ADA provides that "any person" injured by a violation may sue. Opp'n at 3. But there is no reason for interpreting CIPA's "any person" language through the lens of the ADA. Either way, CIPA's "any person" language is immaterial because Plaintiff fails to allege a violation of the statute, which prohibits nonconsensual, unexpected surveillance.

[4] For this reason, Plaintiff's injury is also "so completely due to plaintiff's fault as to break the causal chain." 13A *Wright & Miller's Federal Practice & Procedure* § 3531.5 (3d ed. June 2024 Update); Opp'n at 1 (quoting the same). This is sufficient but not necessary to foreclose plaintiff's case, as this standard applies only to claims (like for ADA and First Amendment violations) that do not turn on the plaintiff's expectations, *see id.*, and does not govern privacy claims.

at 12. The Privacy Policy is linked at the bottom of each page of the Website, *see* FAC ¶ 25 (linking to contemporaneous version of the Website) where such notices are conventionally placed on nearly every commercial website. This alone is also enough to foreclose Plaintiff's claims. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1, *5 n.3 (S.D. Cal. May 8, 2024) (dismissing invasion of privacy claims where privacy policy "would have alerted Plaintiff to the possibility that third parties were monitoring her interactions with Defendant's website"), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025).

Finally, the Court should reject Plaintiff's argument that she did not have an opportunity to consent because "third-party cookies were 'operational immediately before Website loading[.]'" Opp'n at 19. As a self-described "tester" who visited the Website for the express purpose of filing this lawsuit and extracting a settlement, Plaintiff's own allegations confirm she expected third party cookies would be present (as they are on nearly every website) even *before* she navigated to the site. But more fundamentally, Plaintiff's causes of action do not accrue the instant a third-party cookie becomes "operational" or begins collecting information about a website visit. As explained in the following sections, Plaintiff must have actually engaged in conduct on the website sufficient to trigger the elements of her claims. For example, her intrusion of seclusion claim requires highly offensive conduct, such as the surreptitious collection of sensitive information, *infra* Section II.B; her wiretapping claim requires the collection of the *contents* of a communication she initiates on the website, *infra* Section III; and her Trap and Trace claim requires the collection of "dialing, routing, addressing, or signaling" information, MTD at 28–32; *infra* Section IV. Merely alleging that cookies became operational when she landed on Nintendo's website satisfies none of these required elements.

## II. Plaintiff fails to state an intrusion claim because she does not allege a reasonable expectation of privacy or highly offensive conduct.

The FAC does not allege the elements of an intrusion upon seclusion claim,

and the Opposition's attempts to elide the reasonable expectation of privacy element altogether, or to blame Nintendo for hypothetical activities of third parties, do not rescue Plaintiff's claim.

### A. The Opposition does not rectify Plaintiff's failure to allege a reasonable expectation of privacy in information shared on Nintendo's website.

Rather than dispute the FAC's failure to allege Plaintiff's reasonable expectation of privacy in any information she conveyed on the Nintendo website, the Opposition suggests "it does not matter whether [she] had a 'reasonable expectation of privacy' in the information collected[.]" Opp'n at 12. That is canonically incorrect, and the case Plaintiff relies on for that conclusion does not involve an intrusion upon seclusion claim. *See Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1106–07 (N.D. Cal. 2025) (discussing statutory standing for a pen register claim).

At a minimum, Plaintiff must specifically allege *what* information or conduct she reasonably expects to remain private, which she has not done. *See* MTD at 16–17 (citing *Santoro v. Tower Health*, 2024 WL 1773371, at *1, *4 (E.D. Pa. Apr. 24, 2024), *reconsideration denied*, 2024 WL 4771398 (E.D. Pa. Nov. 13, 2024)). Instead, the FAC merely alleges that she visited a publicly available commercial website, Nintendo knew she did so, and Nintendo purportedly shared that information with vendors. These allegations fail to state a claim. As courts have explained, a consumer could not reasonably expect to keep private from a brick-and-mortar store owner and its vendors the fact that they entered a store, and it is no different online. *See, e.g., Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (finding that the alleged tracking of plaintiff's activities on a commercial website was not "highly offensive" because it was "similar to a store clerk's observing shoppers").

The Opposition argues that the Court should *infer* Plaintiff additionally

"entered a confidential search in the search feature of the website," apparently based on allegations she included in a prior complaint but chose to omit in the FAC. Opp'n at 12–13; *compare generally* FAC (not alleging search bar use), *with* Compl. ¶ 89 ("Plaintiff utilized the search bar to perform a highly confidential search."). But neither the Court nor Nintendo may infer anything based on allegations that Plaintiff has abandoned. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (citations omitted)). Nor is it plausible, let alone obvious, that a search for video games on a video game website is "confidential" information that a consumer reasonably expects to remain private. *See Popa*, 153 F.4th at 791 (alleged tracking of visitor on a retail website did not support intrusion claim because it did not implicate a "sensitive sphere" such as "sensitive medical or financial information" and instead was more akin to a customer watched by a shopkeeper in a brick and mortar store); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (no reasonable expectation of privacy in "URLs of web pages visited, . . . search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive motion to dismiss, plaintiff's allegations must be plausible, not merely conceivable).

The Court should also reject the Opposition's invitation to infer that an unnamed third party collected *additional* unnamed information about Plaintiff on other unnamed websites and then built a hypothetical profile with that unspecified information that might hypothetically be used to target her with hypothetical ads. Opp'n at 22–23. None of this is plausibly alleged in, or even reasonably inferred from, the FAC. *See, e.g.*, FAC ¶ 111 (alleging only that "[d]ata brokers purchasing this information *can* assemble comprehensive profiles" of users, not that any data

broker—or anyone else—did so with Plaintiff's information); *see Jones v. Total Sys., Inc.*, 751 F. Supp. 3d 1025, 1035–36 (S.D. Cal. 2024) (dismissing analogous CIPA claim because the plaintiff's allegations did not support reasonable inference that third parties acted in manner creating cause of action against the defendant).

Finally, even if Ms. Cantu had adequately alleged that, under normal circumstances, she could reasonably expect her visit to the Nintendo website to remain private from Nintendo and its vendors—she has not—her expectation is unreasonable under the circumstances actually alleged because Nintendo's Privacy Policy disclosed that this information would not remain private. MTD at 18–19; *see also* FAC ¶ 24 (Nintendo Privacy Policy) ("We may share some or all of the categories of your information, as identified above, with third-party service providers that provide services to us for a variety of business purposes, such as . . . advertising and marketing (including counting ad impressions, analyzing website clicks, verifying positioning and quality of ad impressions, ensuring compliance with industry standards, ad delivery, reporting, personalization, audience segmentation, and analytics). . . ."). The Opposition's only response is to argue that Nintendo's Privacy Policy is not conspicuous enough under the California Consumer Privacy Act ("CCPA"). Opp'n at 15. But the FAC does not allege that Plaintiff did not know of the privacy policy or failed to see it linked at the bottom of every Nintendo webpage. To the contrary, the FAC shows the Privacy Policy visible on the Website and quotes from it extensively, establishing that Plaintiff did, in fact, see it and learn of its contents. *See Leger v. Kalitta*, 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) ("[T]he section of the website from which Plaintiff quoted is appropriately considered here as a document Plaintiff had knowledge of and relied upon in the Complaint"). In short, the CCPA is a red herring: as explained in the Motion, Nintendo complies with the CCPA and there is no CCPA claim alleged here. MTD at 20; *see generally* FAC.

**B. The Opposition does not identify any highly offensive conduct.**

Plaintiff's intrusion claim fails for the additional, independent reason that the FAC does not allege "highly offensive" conduct by Nintendo. *See* MTD at 20–21. The Opposition musters three cursory arguments to the contrary, but none prevails.

*First*, the Opposition asserts that whether a defendant's conduct is "'highly offensive' should not be decided as a matter of law at the pleading stage." Opp'n at 22 (citations omitted). But Courts routinely find at the pleading stage that a plaintiff has failed to allege highly offensive conduct, just as Nintendo argues here. *See, e.g.*, *Popa*, 153 F.4th at 791 (finding allegations of website tracking not "highly offensive" and affirming dismissal of intrusion claim).

*Second*, the Opposition asserts in its "highly offensive" argument that "allegations of data collection performed in order to receive and compile the plaintiffs' personally identifiable browsing history[,] no matter how sensitive or personal[,] constitute[] sufficient allegations of injury for purposes of Article III standing." Opp'n at 22–23 (citing *In re Facebook Tracking Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)). But for purposes of the instant Motion, Nintendo has not disputed Plaintiff's Article III standing, *see supra* note 1. Rather, Nintendo challenges whether Plaintiff has adequately pled "highly offensive" conduct. On that score, Plaintiff has not even alleged the collection of her "personally identifiable browsing history," *see generally* FAC, confirming that she has not pled any facts sufficient to sustain her claim. But even if Plaintiff's standing argument was relevant—it is not— *In re Facebook Tracking* dealt with allegations radically removed from those at issue in this case, as the plaintiffs in that case alleged that Facebook continued to surreptitiously track them *after* they ceased using the service, on various *third-party* websites, 956 F.3d at 606 n.8.

*Third*, the Opposition elsewhere argues that deceit is a "plus factor" that establishes "highly offensive" conduct. Opp'n at 4–5. But this argument is

irrelevant, as the Opposition does not identify, and the FAC does not include, any allegations that Plaintiff was deceived by anything Nintendo did. *Id.*; *see generally* FAC.

**III. The Opposition does not save Plaintiff's wiretapping claim.**

The Opposition fails to overcome the manifest pleading defects in Plaintiff's claim for violation of the Wiretapping Act provisions of CIPA. She has not alleged: the collection of the "contents" of her communications; that third parties attempted to read those contents while they were "in transit"; or that Nintendo had the requisite intent to violate the statute.

**A. Ms. Cantu does not allege that Nintendo collected the "contents" of any communication.**

One of several independent reasons why Ms. Cantu's wiretap claim collapses is that she fails to allege Nintendo collected the "contents" of her communication. MTD at 23–25. The Opposition's only response is that "descriptive URLs" amount to the contents of a communication. Opp'n at 23 (citation omitted). But a descriptive URL can only amount to the contents of a communication where it incorporates certain *text* a user submitted to a website. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107–09 (9th Cir. 2014) ("Under some circumstances, a user's request *to a search engine* for specific information could constitute a communication such that divulging *a URL containing that search term* to a third party could amount to disclosure of the contents of a communication." (emphasis added)). Critically, Plaintiff has not alleged this. *See* MTD at 24–25; FAC ¶ 16. This distinguishes this case from all the cases she cites. *See* Opp'n at 23–24 (citing *In re Facebook*, 956 F.3d at 605 (alleged collection of URLs containing Google search bar inputs); *In re Zynga*, 750 F.3d at 1108 (same); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935–36 (N.D. Cal. 2023) (same); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 864–67 (N.D. Cal. 2025) (URLs containing user-inputted search queries)).

To overcome this problem, Plaintiff invites the Court to look at her statement in a prior declaration that she used the Website's search bar. Opp'n at 12 n.8. But even if this assertion were alleged in the FAC—and it is not—it would make no difference because it does not claim Nintendo collected any descriptive URL.

**B. Plaintiff's wiretapping claim fails to allege the interception of the contents of a communication *in transit*.**

As Nintendo's Motion establishes, the FAC does not plausibly allege that third parties acquired Plaintiff's so-called communications "during transmission" rather than while they were "in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The Opposition attempts to outrun these failings by arguing that (1) Nintendo's Privacy Policy discloses the use of cookies, (2) that it is reasonable to infer such cookies "are automated and do not require any human intervention," and (3) that these are third party cookies. Opp'n at 24. But even if all of that was accepted as true, none of these inferences establishes the required elements of a claim: a third party receiving and attempting to read the meaning of Plaintiff's communications while they are being sent. *See* MTD at 25–27. Nintendo's Privacy Policy does not say that third parties intercept the content of communications while the communications are in transit, nor does it logically or reasonably follow that real-time interception occurs merely because cookies are automated or qualify as third party. *See* Opp'n at 24.

Contrary to the Opposition, recognizing Plaintiff's pleading failure does not require the Court "to engage in fact finding[.]" Opp'n at 24 (citing *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *4 (C.D. Cal. July 31, 2024) ("*Taro Pharmaceuticals II*")). Just as in the *Taro Pharmaceuticals* litigation, the Court here need only recognize the inadequacy of Plaintiff's allegations, i.e., that she has not presented a non-conclusory allegation that the "in transit" requirement has been met here. *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal.

2023) ("*Taro Pharmaceuticals I*") (dismissing CIPA claim because of conclusory "in transit" allegations).[5]

**C. The Opposition does not revive the aiding and abetting theory.**

In response to Nintendo's argument that it did not have the requisite intent to aid a third party in violating CIPA, Plaintiff merely argues that the relevant language in CIPA does not include the word "abetting." Opp'n at 24–25. But regardless of what term of art one uses to describe the statute's application to third-party violations, courts have rightfully understood CIPA to require the *defendant's and the third party's intent* to violate the statute. *See Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025). Claiming that Plaintiff has plausibly alleged intent, the Opposition points only to conclusory allegations that Nintendo "enabled the routing of 'Plaintiff's electronic communications to Third Parties' servers." Opp'n at 25 (cleaned up). But this ipse dixit assertion does not convey the requisite intent, because it does not plausibly allege that Nintendo and a third-party intentionally violated the statute by intercepting confidential communications in transit. *See Talkiatry*, 2025 WL 3190813, at *4 (dismissing similar claim) ("[T]he FAC provides no factual support as to either Defendant or [the third party's] intent nor the use of the purported confidential communications. The FAC seems to assume Meta and other third parties knew or had reason to know that the information was obtained in violation of the law without any factual basis. . . . Without requisite intent by [the third party], there is no unlawful conduct for Defendant to aid and abet.").

[5] The plaintiff in that litigation was able to survive a motion to dismiss only after repleading extensive factual allegations concerning "in transit" interception. The operative complaint at issue in the *Taro Pharmaceuticals II* decision contained detailed allegations about how the defendant embedded software that used "iFrame" code to transmit the plaintiff's chat communications simultaneously to third-party vendor as the website received them. 2024 WL 3738055, at *4. The FAC here contains no such allegations.

## IV. The Trap and Trace Act does not apply to the alleged conduct.

The Opposition devotes a mere seven lines to Plaintiff's Trap and Trace Act claim, which it cannot rescue.

*First*, the Opposition argues that the Trap and Trace Act cannot be limited to telephonic communications only, Opp'n at 20, but several courts have held the precise opposite, including additional courts since Nintendo filed its Motion. *See, e.g., Heiting v. Wildflower Brands, LLC*, No. 25STCV18507 (L.A. Cnty. Super. Ct., Apr. 16, 2026) (sustaining demurrer of trap and trace claim because the statute's purpose is limited to telephones); *Blalock v. EquipmentShare.com Inc.,* No. 30-2025-01508739-CU-MC-CJC (Orange Cnty. Super. Ct., Feb. 25, 2026) (same); *Schallert v. Orkin LLC*, 2025 WL 4332757, at *1, *4 (Cal. Super. Ct. Dec. 15, 2025) (same); *Scharon v. Paramount Glob.*, 2025 WL 2996812, at *2 (Cal. Super. Ct. Oct. 3, 2025) (same); *see also* MTD at 30 (collecting additional cases).[6]

*Second*, even if the statute is not limited to telephonic surveillance, that does not make it applicable to the website tools about which Plaintiff complains. *See* MTD at 28–32; *contra* Opp'n 20. Since Nintendo filed its motion to dismiss, multiple decisions have rejected such claims at the motion to dismiss or demurrer stage on the basis that the statute does not apply to the sorts of website tools at issue. *Balabbo v. Wildflower Brands, LLC*, 2026 WL 1122773, at *8 (Cal. Super. Ct. Apr. 6, 2026) (holding the trap and trace act did not apply to online tracking tools); *Rodriguez v. IMDB.com, Inc.*, 2026 WL 886927, at *3 (Cal. Super. Ct. Mar. 24, 2026) (same); *see also Schallert v. Palo Alto Networks, Inc.*, 2026 WL 754028, at *1 (Cal. Super. Ct. Mar. 6, 2026) (same); *Cammorata v. Sonifi Sols., Inc.*, 2026 WL 500856, at *2 (Cal. Super. Ct. Feb. 18, 2026) (same).

[6] The Opposition objects to the citation of California trial court orders. Opp'n at 20. But "[w]hen no published California opinion controls, federal courts may consider unpublished California opinions as persuasive authority." *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, 2015 WL 4163008, at *4 (C.D. Cal. July 9, 2015).

**V. The rule of lenity requires that ambiguity in criminal statutes be construed in Nintendo's favor.**

If it were not otherwise inclined to dismiss Plaintiff's claims, the Court should apply the rule of lenity in light of all of the questions raised in Nintendo's Motion concerning the application of CIPA to Nintendo's alleged conduct. MTD at 32–33. The Opposition asserts that the rule of lenity does not apply because the statute is not ambiguous, Opp'n at 20–21, but the raft of cases dismissing claims just like Plaintiff's proves that, *at minimum*, it is ambiguous whether the statutory text would encompass Plaintiff's claims rather than foreclose them altogether. *See supra* Sections III–IV.

The Opposition also attempts an argument that CIPA can be deemed unambiguous based on a purported relationship to the Federal Patriot Act and its legislative history. Opp'n at 21. But the Patriot Act is not at issue in this case, is not referenced in CIPA, and (unlike the provisions of CIPA at issue here), it contains no private right of action. *See S. Shore LLC v. Wells Fargo Bank, N.A.*, 2024 WL 3513503, at *2 (C.D. Cal. Apr. 25, 2024); Cal. Penal Code §§ 631, 638.50, *et seq*.

Finally, the Opposition's observation that the Trap and Trace provisions "were enacted into law in 2015, which was 14 years after the Patriot Act had been enacted by Congress and well after Internet websites became ubiquitous in American society" just underscores how conspicuous it is that those provisions never mention the internet. *See* Cal. Penal Code § 638.50 *et seq*. If those provisions unambiguously applied to internet tracking activity, they would say so.

**VI. Ms. Cantu's claims should be dismissed with prejudice.**

Ms. Cantu has already amended her complaint once and should not be given leave again, particularly where Plaintiff previewed Nintendo's arguments in its previously-filed demurrer. *See, e.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("[T]he district court may . . . deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed. . .").

Plaintiff does not address this argument in her Opposition except to ask to "be allowed an opportunity to amend the FAC insofar as the Court deems it necessary to expressly plead Plaintiff's use of the search bar feature on the Website." Opp'n at 12 n.8. But Plaintiff has twice had an opportunity to do this. Indeed, her initial complaint already alleged this, albeit in conclusory fashion and with no factual support: "Plaintiff utilized the Search Bar to perform a highly confidential search." Compl. ¶ 89.

When Plaintiff amended her complaint to assert a putative class action, she struck this allegation. Accordingly, Plaintiff cannot now have her cake and eat it too. She should not be granted further leave to amend to re-assert a conclusory allegation she already abandoned. *See Harris v. City of Kent*, 2023 WL 6784361, at *3 (9th Cir. Oct. 13, 2023) (affirming dismissal of a claim alleged in plaintiff's original complaint but omitted from the plaintiff's amended complaint).

Moreover, any such amendment—which would apply to Plaintiff's wiretapping claim—would be futile because it would not cure Plaintiff's failure to plausibly allege the interception of a communication "in transit" or Nintendo's intent to assist a third party in intentionally engaging in unlawful wiretapping. *See supra* Sections III.B–C.

**CONCLUSION**

For the foregoing reasons, Nintendo respectfully requests that the Court dismiss Plaintiff's case with prejudice.

Dated: June 1, 2026

**PERKINS COIE LLP**

By: _/s/ Nicola C. Menaldo_
Alisha C. Burgin
Nicola C. Menaldo
David S. Watnick

Attorneys for Defendant Nintendo of America Inc.

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Nintendo of America Inc. certifies that this brief is 15 pages, which complies with the page limits outlined in Judge Garnett's current standing orders, superseding the word limit outlined in Local Rule 11-6.1. Judge Sherilyn Peace Garnett, *Standing Order for Newly Assigned Civil Cases* § G.4 (C.D. Cal.); C.D. Cal. L.R. 11-6.1 (setting word limits "except as . . . ordered by a judge").

Dated: June 1, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
Alisha C. Burgin
Nicola C. Menaldo
David S. Watnick

Attorneys for Defendant Nintendo of America Inc.